UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:24-cv-21463-RKA

NEREYDA SUHEY CASTILLO MARENCO,

      Plaintiff,

vs.

J.C. PAINTING CONTRACTOR LLC,
MARIA GONZALEZ and
TOMAS GONZALEZ SOTELO,

      Defendants.

_____/

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS AS THE PREVAILING PARTY (ECF NO. 38)

      Defendants, by and through the undersigned counsel, hereby file this Response to Plaintiff's Motion for an Award of Attorney's Fees and Costs (ECF No. 38), and state as follows:

### MEMORANDUM OF LAW

I.    <u>Plaintiff's Motion Doesn't Comply With Local Rule 7.3(b) in Several Important Respects.</u>

      Rule 7.3(b), S.D. Fla. L.R. requires, "…. a draft motion compliant with Local Rule 7.3(a)(1)-(8) must be served but not filed at least thirty (30) days prior to the deadline for filing any motion for attorneys' fees and/or costs that is governed by this Local Rule." In this case, Plaintiff did not serve a copy of the draft motion prior to filing it with the Court.

      Rule 7.3(a)(8), S.D. Fla. L.R., requires the movant "certify that a good faith effort to resolve issues by agreement occurred pursuant to Local Rule 7.3(b), describing what was and was not resolved by agreement and addressing separately the issues of entitlement to fees and amount." Plaintiff's counsel certifies compliance with Local Rule 7.1, which is true in that counsel provided a draft of his time records and there were some settlement discussions, but not Local Rule 7.3(b),

which may have obviated the need for the motion and/or eliminated certain arguments and objections. Plaintiff could have agreed to a reduction of the fees claimed in the motion based on (1) the limited results obtained, (2) billing judgment, or (3) based on arguments as to specific billing entries, thereby saving counsel from having to research and brief agreed-upon issues.

Rule 7.3(a)(4), S.D. Fla. L.R., requires that the movant "disclose the terms of any applicable fee agreement." Plaintiff does not attach the fee agreement nor disclose the terms of the agreement, besides cursory reference to a "contingency arrangement" that all attorneys who worked on this case would be compensated at a rate of $550 per hour.[1] It's unknown whether the fee agreement includes a provision for Plaintiff's counsel to receive a percentage of recovery, a requirement of payment by Plaintiff of counsel's full fees if the case is lost/ settled, or payment based on the recovery of money in excess of Plaintiff's unpaid wages, such as included in a fee agreement used by Plaintiff's counsel in another action:

> As compensation for my attorney's services, I agree to pay my attorneys the greater of (a) 40% of the proceeds of the recovery, (b) any attorneys' fees awarded by the court or offered/ actually paid by the Defendants, or (c) all amounts paid/ received in excess of the outstanding and unpaid wages due to Client, whichever is more.

*See e.g. Mendez v. Alpha & Omega Calibration Services LLC, et al.*, USDC S.D. Fla. Case No.: 1:24-cv-20543-KMW (ECF No. 37 and 37.1)(Exhibit 1).

This Court has rejected fee petitions before for violating Rule 7.3. *Norych v. Admiral Ins. Co.*, No. 08-60330-Civ-Altonaga, 2010 WL 2557502, at 2 (S.D. Fla. June 23, 2010)(denying motion for attorney's fees for failure to comply with Local Rules 7.3(a)(1) and 7.3(b)); *see also J.B. Hunt Transp., Inc. v. S.D. Transp., Inc.*, 589 F. App'x 930, 933 (11th Cir. 2014); *Koppelman*

---

[1] An agreed upon rate does not necessarily determine a reasonable rate. *Tire Kingdom v. Morgan Tire Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001).

2

*v. Galt Ocean Manor Condo. Ass'n, Inc.*, 2017 WL 7411025, at *3 (S.D. Fla. Dec. 1, 2017);

*Sodikart USA v. Geodis Wilson USA, Inc.*, 2014 WL 6968073, at *6 (S.D. Fla. Dec. 9, 2014).

II.    <u>The Number of Hours Billed by Plaintiff's Counsel Are Unreasonably High.</u>

It is difficult prove or disprove the time an attorney spends on tasks outside of the

courtroom. It is also difficult to pin down the precise amount of time that an attorney should

objectively spend on a task. For this reason, courts and counsel must generally trust an attorney's

account of the time spent so long as it is reasonable. But when time entries can be established as

unreasonable or excessive, the benefit of the doubt is eliminated, and the remaining time entries

are called into question. Here, there are time entries that Defendants submit are excessive:

A.    In Plaintiff's time records, Plaintiff attributes 7.1 hours to drafting the motion for attorney's fees and legal research. All time was billed by Brian Pollock at $500/hr. A review of the motion in comparison to other fee motions filed by Plaintiff's counsel recently in other cases shows that the motion is, for the most part, the same as prior motions. *See e.g. Courtney McLeod v. Chef Creole Inc.*, USDC S.D. Fla. Case No.: 1:22-cv-22657-KMM (ECF No. 37, Motion for Attorney's Fees and Costs)(Exhibit 2); *Bryan Sevares v. American Pipeline Construction, LLC*, USDC S.D. Fla. Case No.: 1:22-cv-21233-KMM (ECF No. 34; Motion for an Award of Attorney's Fees and Costs and Motion to Compel Fact Information Sheets); *Jose Telleria v. Altzan Foods, Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-21130-BB (ECF No. 52, Motion for an Award of Attorney's Fees and Costs); *Pablo Comas v. Chris's Auto Sales Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-20701-BB (ECF No. 27, Motion for an Award of Attorney's Fees and Costs). There is one component that is somewhat unique to counsel's prior fee motions, and that is the lengthy argument on proportionality and results obtained (*see* Motion, ECF No. 38, Pgs. 4-9), but that portion is substantively similar to Plaintiff's counsel's prior court filings, in particular, the case of *Juan Mendez v. Alpha & Omega Calibration Services LLC*, USDC S.D. Fla. Case No.: 1:24-cv-20543-KMW (ECF No. 37, Pgs. 5-10)(Exhibit 1). The fee Motion is basically a stock motion, where the modifications could be made by a paralegal or clerk, with minimal oversight or input by an attorney (appx. 30 minutes to 1 hour), so it is not possible to justify the expenditure of 7.1 hours on this task by an attorney billing at $500/hr.[2]

---

[2] Curiously, in *Mendez*, Plaintiff's counsel only billed 3.1 hours for a motion that is essentially the same as the motion in this case, including all arguments pertaining to attorney's fees and costs, hourly rates, time expended and even the portion concerning results obtained and proportionality. *Juan Mendez v. Alpha & Omega Calibration Services LLC*, USDC S.D. Fla. Case No.: 1:24-cv-20543-KMW (ECF No. 37-3, Pg 13, time entry on 8/1/24 for 3.1 hours). Yet, a couple weeks later in this case, counsel is billing 7.1 hours for essentially the same previously submitted product.

B.  Another example is the .5 hours spent by Attorney Pollock on August 5, 2024 (*see* Motion, ECF No. 38-1, Pg 8), drafting the Motion to Compel Fact Information Sheets. The motion itself is just five (5) numbered paragraphs. To the extent the task is worthy of the time of Attorney Pollock at $500/hr., turns out, Plaintiff's counsel has filed nearly the same motions (save the names of the plaintiffs) in other cases, including *Courtney McLeod v. Chef Creole Inc.*, USDC S.D. Fla. Case No.: 1:22-cv-22657-KMM (ECF No. 36, Motion to Compel Fact Information Sheet)(Exhibit 3); *Bryan Sevares v. American Pipeline Construction, LLC*, USDC S.D. Fla. Case No.: 1:22-cv-21233-KMM (ECF No. 34; Motion for an Award of Attorney's Fees and Costs and Motion to Compel Fact Information Sheets); *Pablo Comas v. Chris's Auto Sales Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-20701-BB (ECF No. 27, Motion for an Award of Attorney's Fees and Costs and Motion to Compel Fact Information Sheets).

C.  Attorney Pollock also spent .6 hours on August 6, 2024 (*see* Motion, ECF No. 38-1, Pg 8), drafting the actual Fact Information Sheets that accompanied the aforementioned motion.[3] The Fact Information Sheets do not change from case-to-case except for the names. Revising the sheets is not a task for an attorney, especially one billing at $500/hr. In fact, the task should be completed by a secretary or clerk and not an attorney or paralegal at all. Even still, whether completed by an attorney or secretary, charging .6 to change the names on a Fact Information Sheet is unreasonable. *See Courtney McLeod v. Chef Creole Inc.*, USDC S.D. Fla. Case No.: 1:22-cv-22657-KMM (ECF No. 36, Motion to Compel Fact Information Sheet)(Exhibit 3); *Bryan Sevares v. American Pipeline Construction, LLC*, USDC S.D. Fla. Case No.: 1:22-cv-21233-KMM (ECF No. 34; Motion for an Award of Attorney's Fees and Costs and Motion to Compel Fact Information Sheets); *Pablo Comas v. Chris's Auto Sales Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-20701-BB (ECF No. 27, Motion for an Award of Attorney's Fees and Costs and Motion to Compel Fact Information Sheets).

D.  Another instance of excessive billing is the .4 hours spent by Attorney Pollock on August 5, 2024 (*see* Motion, ECF No. 38-1, Pg 8) drafting a Motion for Writ of Execution. The motion is just five (5) numbered paragraphs. As with the above Motion to Compel Fact Information Sheets, Plaintiff's counsel filed nearly identical motions (save the names of the plaintiffs) in other cases, including *Jose Telleria v. Altzan Foods, Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-21130-BB (ECF No. 67, Motion for Writ of Execution)(Exhibit 4); *Pablo Comas v. Chris's Auto Sales Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-20701-BB (ECF No. 41, Motion for Writ of Execution).

E.  The 1.4 hours spent by Attorney Pollock on April 18, 2024 drafting the Complaint is simply too much (*see* Motion, ECF No. 38-1, Pg 2). Counsel claims that an unspecified part of the time was spent on "research online re: the corporate Defendant for inclusion

---

[3]  Plaintiff also "block bills" and represents in this line item that time was also spent ostensibly revising the motion and order, but more than enough time had already been billed for those tasks (as addressed above in Section II.B).

4

in the Complaint and re: Defendants." This time entry is vague. But, one can assume it means that counsel looked up the Defendant on www.sunbiz.org. This is not a task for an attorney, it is for a clerk or secretary. As to the Complaint itself, it is substantially similar to other FLSA overtime complaints Plaintiff's counsel has filed. *See e.g. Cristina Munoz v. United Veterinary Services, LLC, et al.*, USDC S.D. Fla. Case No.: 1:23-cv-20203-RNS (ECF No. 1)(Exhibit 5); *Juan Mendez v. Alpha & Omega Calibration Services LLC*, USDC S.D. Fla. Case No.: 1:24-cv-20543-KMW (ECF No. 1); *Winston Maracallo v. Cusano AC & Heating, Inc., et al.*, USDC S.D. Fla. Case No.: 1:24-cv-20546-JG (ECF No. 1). Admittedly, in this case, Plaintiff included a second cause of action, for violation of 26 U.S.C. §7434, but even this claim is not original and is strikingly similar to other complaints filed by Plaintiff's counsel. *See e.g. Manuel Chaves v. Basilico Ristorante at Doral, Inc., et al.*, USDC Case No.: 1:22-cv-23580-JB (ECF No. 1, Counts III-VII)(Exhibit 6); *Jorge Armando Seras v. Pike Electric, LLC*, USDC S.D. Fla. Case No.: 1:22-cv-23686-CMA (ECF No. 1).

F. At the same time Attorney Pollock was drafting the Complaint, Attorney Pollock also billed to "prepare Summons and Civil Cover Sheet" (*see* Motion, ECF No. 38-1, Pg 8). It is unclear exactly how much of the 1.4 hours was spent on this because of block billing, but in reality, any time spent on these tasks is not compensable attorney time.

G. Counsel's paralegal spent 3.4 hours on 4/17/24 meeting with the plaintiff and collecting documents from the client and organizing them (*see* Motion, ECF No. 38-1, Pg 1). Those documents were produced to Defendant and consisted of only 34 pages. *See* Exhibit 7. It is also unclear what is meant by organizing the documents, but to the extent it means scanning them, the time is secretarial and not recoverable. The following day, Plaintiff's paralegal bills another 1 hour for unclear task of downloading and organizing the same 34 documents from Plaintiff (*see* Motion, ECF No. 38-1, Pg 1).[4]

H. There are other instances of overbilling and duplicate billing as set forth in the item by item response to Plaintiff's timesheets, attached hereto as Exhibit 8.

Overall, Plaintiff's counsel billed an unreasonable number of hours: (1) Brian Pollock, Esq. – 18.3 hours; (2) P. Brooks LaRue, Esq. – 31.3 hours; and (3) Steffany Sanguino, Paralegal – 19.1 hours. At its core, this was a garden variety overtime lawsuit that spanned approximately 3 months from the time the lawsuit was filed until the Offers of Judgment were accepted (*see* ECF No. 1 and 26). In that time, there were only 25 mostly routine docket entries. There were no motions to dismiss or other substantive motions, no written discovery, no depositions, and very little other activity on or off the record. While true that Plaintiff deserved to be represented by counsel, no

---

[4] Plaintiff's paralegal "block bills" by also stating that information on witnesses was received. *Id.*

reasonable paying client should be billed more than necessary. "In the private sector, 'billing judgment' is an important component in fee-setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424 (1983)(internal citation omitted).

Here, as aptly demonstrated above, Plaintiff's counsel did not exercise sufficient billing judgment and claims too many hours. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In this case, it makes sense to apply an across-the-board cut. It is clear that numerous time entries are excessive, thereby casting doubt on all other time entries.

Here, Defendants suggest that a 50% across-the-board cut of Plaintiff's counsel's hours is appropriate. The hours billed by Plaintiff's counsel are, in numerous circumstances, unreasonable, excessive, and unnecessary. In the event the Court instead determines that a line-by-line analysis is required, Defendants rely on the arguments made herein in this Response and the line-by-line analysis of Plaintiff's timesheets attached hereto as Exhibit 8.

It is undisputed that "an attorney may recover fees for time spent litigating the award of a section 1988 fee." *Thompson v. Pharmacy Corp. of Am.*, 334 F.3d 1242, 1245 (11th Cir. 2003). However, "[l]awyers should not be compensated for turning the litigation about attorneys' fees into a second major litigation." *Id.* While courts cannot entirely deny recovery of fees for litigating fees, courts can deduct any unreasonable fees spent litigating fees. *Id.* In this case, Plaintiff's demand for an excessive hourly rate and excessive number of hours led to counsel for both parties unnecessarily incurring additional and unwarranted attorney's fees. For this reason, Plaintiff's

request for reimbursement of hours billed by counsel associated with the instant Motion (7.1 hours) and reply should be significantly reduced to no more than 1.0 hours.

III.   Plaintiff's Time Entries and Descriptions Are Too Vague.

As described in the attached line-by-line analysis of Plaintiff's timesheets attached hereto as Exhibit 8, far too many of counsel's descriptions are too vague for the Court to discern their reasonableness and legitimacy. *See ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999); *see, e.g., La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) ("Litigants take their chances when submitting... fee applications [containing vague descriptions] as they provide little information from which to determine the 'reasonableness' of the hours expended...."); *H.J. Inc., v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991)(disallowing billing entries such as "legal research" on vagueness grounds); *Smart SMR of New York, Inc. v. Zoning Com'n of Town of Stratford*, 9 F. Supp. 2d 143, 152-53 (D. Conn.,1998) ("truncated descriptions, such as 'document review,' 'research,' 'telephone with Bob Nichols,' 'letter to Mr. Buturla,' and 'motion-memo of law, affirmation'" insufficient to support fee application); *Levinson v. Prentice-Hall, Inc.*, No. 85-3440 (CSF), 1989 WL 65622, at *6 (D.N.J. June 7, 1989)("Courts have routinely considered terse summaries [such as "research," "conference with partner X," "review of research," "memo," "telephone call-client," and 'similarly vague entries'] inadequate to support a fee petition."). Defendants request that all non-descript time entries be disallowed.

IV.   Duplicate Billing and Billing in 6-Minute Increments for Tasks That Take Seconds.

Although prior cases have cautioned attorneys against block billing, the practice of billing in six-minute increments for tasks that likely take only seconds to accomplish goes too far in the other direction. *See Ciolino v. Eastman*, 2016 WL 6246757, at *3 (D. Mass. Oct. 25, 2016); *see also Gottlieb v. Construction Services & Consultants, Inc.*, Case No.: 05-14139-cv-Graham/

Lynch (R&R D.E. 98)(imposing a 1/3rd reduction based on unspecified "multiple, small billing entries for a single work product, lack of efficiency, and poor billing judgment"). The best example of this is the review of Defendants' 5 successive Court filings by Brooks LaRue, Esq., on June 6, 2024, including Defendants' notice of appearance (.1), certificate of interested persons (.1), notice of pendency of no other similar actions (.2), unopposed motion for extension of time (.1) and order (.1). In total, counsel billed .6 for what likely took a total of 5-10 minutes, by billing each item separately. *See* Motion, ECF No. 38-1, Pg 4. To compound the problem, counsel's paralegal also billed to review each of the very same documents, on the very same day, albeit slightly more efficiently in that she billed .5 hours total (in 0.1 increments) for reviewing the 5 documents. *See* Motion, ECF No. 38-1, Pg 4. *See e.g. Howard Michael Caplan v. Rehabclinics (PTA) Inc., et al.*, USDC S.D. Fla. Case No.: 19-cv-62890-Strauss (ECF No. 52, Pgs 11-12)(rejecting patently excessive claim for 0.1 for 25 successive emails when there was no indication that 2.5 hours of time was expended). Additionally, as described in Defendant's rebuttal attached as Exhibit 8, there were other instances of duplicate billing by Plaintiff's attorneys and paralegal.

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exclude "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301 (emphasis in original). The burden rests on the plaintiff to submit a request for fees that will enable the court to determine how much time was reasonably expended. *Loranger*, 10 F.3d at 782.

V.      Billing for Travel Time.

Plaintiff's counsel billed 4.5 hours on July 9, 2024, to travel to and attend the Settlement

Conference but does not express how much of that time was travel time. The Court's Minute Entry

for the proceeding states that the time in Court was 3 hours (ECF No. 25). Defendants submit that

travel time (appx. 1.5 hours) should be cut in half. *See e.g. Jones v. Carswell Property*

*Maintenance, Inc.*, No. 09-22027-CIV, 2012 WL 163884, *6 (S.D. Fla. Jan. 19, 2012) (reducing

attorney's travel time by one half in fashioning attorney fee award).

VI.     Secretarial/ Clerical Time is Simply Unbillable.

Regardless of whether clerical/ secretarial work is performed by secretaries, receptionists,

paralegals or attorneys, the time is simply not compensable. In this case, either Plaintiff's counsel

or his paralegals have attempted to bill for secretarial tasks and thereby attempt to shift the burden

of overhead expenses such as secretarial time to Defendants. Defendants' rebuttal to Plaintiff's

time entries is attached as Exhibit 8.

As with attorneys' work, the hours expended by paralegals, law clerks, and other

paraprofessionals are compensable **only if these individuals are engaged in work traditionally**

**performed by an attorney**. *Missouri v. Jenkins*, 491 U.S. 274, 285(1989); *Jean v. Nelson*, 863

F.2d 759, 778 (11th Cir. 1988). "As to reasonable paralegal fees, only time spent performing work

traditionally performed by attorneys will be compensated." *Branch Banking and Trust Co. v.*

*Imagine CBQ, LLC*, 2012 WL 1987830, at *3 (S.D. Ala. June 4, 2012) (*citing Allen v. U.S. Steel*

*Corp*, 665 F.2d 689, 697 (5th Cir. 1982)). "Otherwise, paralegal expenses are separately

unrecoverable overhead expenses." *Allen*, 665 F.2d at 697. "Purely clerical or secretarial tasks

should not be billed at a paralegal rate regardless of who performs them." *Allen v. McClain EZ*

*Pack of Alabama, Inc.*, 2005 WL 1926636, *3 (S.D. Ala. 2005) (*quoting Missouri v. Jenkins ex*

*rel. Agyei*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

Courts in this Circuit generally consider tasks such as mailing or emailing correspondence and documents, making routing calls to clients, scheduling, obtaining pleadings from the court's database and printing documents as secretarial functions. *See Allen,* 665 F.2d at 697; *Johnson v. TMI Mgmt. Sys., Inc.*, 2012 WL 4435304, *5; *Oden*, 2013 WL 4046456, * 8; *see Whitney Bank v. Davis-Jeffries-Hunold, Inc.*, 2012 WL 5470131, * 7 (S.D. Ala. Nov. 9, 2012) (holding that time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition). Courts in this District have also held that "obtaining documents/information from PACER, gathering records, preparing filing notices, scheduling matters, confirming dates, and compiling attachments/exhibits … represents clerical and/or secretarial time and is not properly compensable." *Access for the Disabled, Inc. v. Leder*, Case No.: 02-60311-CIV-Marra/ Seltzer (S.D. Fla. September 26, 2008)(R&R D.E. 118).

VII.     Adjustments to the Lodestar Amount.

The case law in this Circuit is clear that in determining the amount of attorney's fees to be awarded, courts apply a three-step process which requires that courts (1) determine whether the party prevailed in the litigation; (2) determine the lodestar amount, which is calculated by multiplying the number of hours reasonably expended in litigating the claim by the reasonable hourly rate; and (3) adjust the lodestar, if necessary, to account for the results obtained by the prevailing party. *Atlanta J. & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1289 (11th Cir. 2006). A reasonable attorney's fee award is "properly calculated by multiplying the

number of hours reasonably expended on the litigation times a reasonable hourly rate." *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*quoting Blum v. Stenson*, 465 U.S. 886, 888 (1994)). This "lodestar" may then be adjusted for the results obtained by the attorney. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).

Plaintiff would have this Court believe that FLSA cases are exempt from this process and that full attorney's fees should be awarded no matter how little success is achieved. But as another Eleventh Circuit opinion explains, "After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court **must** next consider the necessity of an adjustment for results obtained." *See Norman v. Hous. Auth. of City of Montgomery*, 1292, 1302 (11th Cir. 1988)(emphasis added). "**[T]he Supreme Court has made plain that in determining reasonable attorney's fees, 'the most critical factor is the degree of success obtained.'**" *See Asbun v. Resende*, No. 15-61370-Civ-Marra/Matthewman, 2016 U.S. Dist. LEXIS 132534, at *27 (S.D. Fla. Sep. 26, 2016); *Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*, No. 08-61240-CIV, 2009 WL 2143628, at *2 (S.D. Fla. July l6, 2009) (*quoting Hensley*, 461 U.S. at 436). "If a plaintiff's victory is limited, the lodestar should be reduced to reflect the limited result." *Id*. (citing *Norman*, 836 F.2d at 1302; *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350-51 (11th Cir. 2008) ("[A] downward adjustment to the lodestar is merited if the party was partially successful in its efforts.")). "Thus, a district court may reduce an award to account for situations where the lodestar figure is unreasonable in light of the limited success obtained." *Id*. (citing *Martinez v. Hernando County Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014)).

Although Plaintiff briefs the issue and cites to cases where attorney's fees are awarded with little or no adjustment, the law remains that in deciding reasonable attorney's fees, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436:

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id.* How is the degree of success measured? Certainly, one way, especially in a case demanding money damages, is to compare the amount of money sought vs. the amount of money awarded. In fact, this seems most reasonable in a case where money is the driving force and ultimate reward (as opposed to a case to vindicate civil rights or reform without the prospect for money damages). In this case, Plaintiff claimed to be owed $110,100 in unpaid wages and damages but only $30,000 was recovered. Plaintiff actually recovered only 27% of the amount allegedly owed. Plaintiff's results were far from exceptional or "excellent."[5] The actual relief obtained was underwhelming to say the least. And if success in an unpaid wage case is measured in terms of recovery of what is allegedly owed, Plaintiff's "success" in this case was limited at best.

The impact of inflated demands in FLSA cases cannot be overstated. When a plaintiff demands an excessive amount in a case legitimately valued at much less, settlement efforts can be frustrated and cases prolonged. Many Federal Courts have developed orders and procedures aimed compelling disclosure of the amount owed to facilitate resolution and minimize attorney's fees and costs. In this case, the Court entered an Order (ECF No. 5) wherein the Court laid out an efficient procedure to resolve the case. The Court's rationale for the Order was contained in the very first paragraph, "To assist the Court in the management of the case, and in an effort to foster and early and cost-effective resolution, the parties are ORDERED to comply with the following

---

[5] "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 436.

procedures…" *Id.* The requirements of this Order were simple and straightforward. First, Plaintiff was to provide an initial estimate of the total amount of unpaid wages and a preliminary calculation of such wages. *Id.* at ¶1. Defendants were then to file a response, followed shortly thereafter by a Settlement Conference with the Magistrate Judge. *Id.* at ¶¶2-3.

Defendants complied with the letter and spirit of the Court's Order, exchanged information and documents, attempted to settle the case at the Settlement Conference, and served Offers of Judgment on the day after the Settlement Conference, which left open the only issue that was in dispute, the amount of Plaintiff's counsel's attorney's fees. The Defendants also served an Offer of Judgment on July 23, 2024 offering Plaintiff's $12,000 for fees and costs in an effort to curtail the fees and costs being incurred by both sides, but the offer was not accepted. Exhibit 7.

The primary impediment to settlement was the amount of alleged damages estimated by the Plaintiff. In Plaintiff's Statement of Claim, Plaintiff estimated that she was owed $52,550 in unpaid overtime wages, $52,550 in liquidated damages, $5,000 in §7434 damages, plus unspecified attorney's fees and costs. In total, Plaintiff was seeking a staggering $110,100, plus attorney's fees and costs. That amount was grossly exaggerated and, in any event, entirely unaffordable to the Defendants. Ultimately, the case was resolved for the much more reasonable amounts of $12,500 in unpaid overtime wages, $12,500 in liquidated damages, $5,000 in §7434 damages (in total, just $30,000), plus reasonable attorney's fees and costs. Had Plaintiff more accurately estimated her actual damages and/or made reasonable efforts during settlement discussions, the case would have been settled in an even more efficient and less costly manner. As it was, Plaintiff resisted reason until confronted with Defendants' Offers of Judgment, and the consequences of same, thereby making the case more costly for both Plaintiff and the Defendants.

No reasonable employer should be asked to pay a multiplier of 3x's the value of the claim just to settle. Worse yet, a small employer like Defendants cannot afford to pay 3x's the value of the case. Nobody benefits from such overreaching. The lawyers continue to work on the file, only to settle much later for the true value of the case. This practice puts a drain on defendants, small businesses and the courts. It also delays payment to the plaintiffs. Indeed, in this case, while Plaintiff took huge strides backwards in foregoing 73% of her alleged unpaid wages and damages, Plaintiff's counsel took steps forward, increasing the attorney's fees incurred exponentially, for which they are demanding a 100% recovery.

Courts in this District have applied the Supreme Court and Eleventh Circuit's law to reduce attorney's fees in FLSA cases. In *Asbun v. Resende*, No. 15-61370-Civ-Marra/Matthewman, 2016 U.S. Dist. LEXIS 132534, at *27 (S.D. Fla. Sep. 26, 2016), the Court held:

> Here, according to Plaintiff's Complaint, Plaintiff worked for Defendants for a grand total of 28 days and was owed $2,710 in back pay, plus an equivalent amount in liquidated damages, for a total of $5,420. The case settled for $2,000, which is 37% of the amount sought. The fee award should, therefore, also be reduced due to limited success. *See Ramos*, 2009 WL 2143628, at *2 (reducing the fee award due to limited success); *Reyes v. Falling Star Enter. Inc.*, Case No. 04-cv-1648-Orl-KRS, 2006 WL 2927553 (M.D. Fla. Oct. 12, 2006) (50% reduction of lodestar due to limited success). The Court finds that the total award of $17,130, as calculated above for both attorneys, should be reduced by an additional 30%.

*Id.* The Court also addressed the plaintiff's argument that the Court should only concern itself with the amount of wages claimed and disregard that liquidated damages were also sought when considering the results of the case:

> Plaintiff claims she recovered 75% of the amount claimed because she recovered $2,000 of the $2,710 in back pay sought. However, Plaintiff fails to take into account the $2,710 in liquidated damages that she sought in the Complaint.

*Id.* at fn 1.

In this case, Plaintiff recovered even less than the 37% achieved in *Asbun*. In this case, Plaintiff settled for only 27% of the amount sought and allegedly owed. Therefore, Defendants respectfully request that Plaintiff's attorney's fee award reflect this limited success and likewise be reduced by 50%. In *Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*, No. 08-61240-CIV, 2009 WL 2143628, at *2 (S.D. Fla. July l6, 2009), the plaintiffs recovered between 26 and 30 percent of what they were seeking. In that case, the Magistrate Judge reduced counsel's fees by 25%. However, on review, the District Court determined that was not enough and reduced counsel's fees by 50%. *Id. See also Popham v. City of Kennesaw*, 820 F.2d 1570, 1578-82 (11th Cir. 1987) (affirming the district court's reduction of attorney's fees by 67% where the amount received was only a small percentage of the damages sought); *Reyes v. Falling Star Enter. Inc.*, Case No. 04- cv-1648-Orl-KRS, 2009 WL 2927553 (M.D. Fla. Oct. 12, 2006) (50% reduction of lodestar due to limited success); *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281 (S.D. Fla. 2008) (67% reduction for limited results compared to awards sought).

VIII.    <u>Conflating the Concepts of "Limited Success" and "Proportionality."</u>

In Plaintiff's Motion, Plaintiff extensively argues case law holding that an attorney's fee award should not be "proportional" to the client's recovery and then conflates that reasoning to argue that a plaintiff's limited success in an FLSA case does not warrant a downward adjustment in the attorney's fees. But this argument misses the mark in this case. Defendants' argument is not that the attorney's fees must be proportional to the $30,000 recovered by Plaintiff. Rather, the argument is that the attorney's fees should be adjusted downward in light of Plaintiff's limited success where the Plaintiff claimed to be owed $110,100 but only $30,000 was recovered (27%). The tactic of conflating the concepts of "proportionality" and "limited success" has been tried before, and should be rejected now as it has been in the past:

In Plaintiff's Partial Objections, Plaintiff cites *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997), in objecting to the Report's 30% downward adjustment to the lodestar calculation as contrary to "the Eleventh Circuit's admonition that the amount of attorney's fee recovered should not be a strict proportion of the amount of damages that plaintiff recovered." Plaintiff's objection is without merit. The Report's 30% downward adjustment was a consequence of the "partial success" obtained by Plaintiff's attorney, not a reduction in proportion to the amount of damages that Plaintiff recovered.

*See Asbun v. Resende*, No. 15-61370-Civ-Marra/Matthewman (ECF No. 17, Jan. 3, 2017).

IX.     <u>Plaintiff's Counsel's Reasonable Hourly Rate.</u>

Plaintiff requests attorney's fees at the following rates for his attorneys: (1) Brian Pollock, Esq. - $500/hr.; (2) P. Brooks LaRue, Esq. - $325/hr.; and (3) Steffany Sanguino, Paralegal - $165/hr. Defendants submit that these rates are excessive. Rather than recreate the wheel, the undersigned respectfully requests that the Court take notice of other Court decisions in the recent past awarding Plaintiff's counsel fees at the following rates: (1) Brian Pollock, Esq. - $450/hr.; (2) P. Brooks LaRue, Esq. - $275/hr.; and (3) Steffany Sanguino, Paralegal - $150/hr. *See Juan Mendez v. Alpha & Omega Calibration Services LLC*, USDC S.D. Fla. Case No.: 1:24-cv-20543-KMW (ECF No. 40; Aug. 13, 2024)(Exhibit 9); *see also Cruz Valdivieso Figuera v. All VIP Care Inc., et al.*, USDC S.D. Fla. Case No.: 0:22-cv-WPD (ECF No. 175; Aug. 15, 2024)(Report and Recommendation of M.J. Hunt awarding Attorney Pollock $450/hr. and Steffany Sanguino $150/hr.); *see also Jose Telleria v. Altzan Foods, Corp., et al.*, USDC S.D. Fla. Case No.: 1:22-cv-21130-BB (ECF No. 66)(awarding Attorney Pollock $ 450 per hour).

These rates, however, are not set in stone. In other words, just because an attorney is awarded an hourly rate by one court does not necessarily mean that rate applies forevermore and/or that it cannot be adjusted downward in the future. In this case, Plaintiff's counsel's work was less than stellar and the results less than exceptional. First, counsel misevaluated the case and failed to properly manage the client and damage calculations, allowing a grossly excessive damage demand

of $110,100 in a case ultimately resolved for $30,000. Second, counsel failed to manage the case and client in rejecting settlement offers until after the Settlement Conference when Defendants memorialized their settlement offer in Offers of Judgment, thereby imposing on counsel the consequence of being foreclosed from earning attorney's fees and costs incurred after service of the OJs. These actions unreasonably multiplied the proceedings causing all sides to spend additional time on a case that should have settled earlier. Third, counsel has demanded unwarranted and excessive attorney's fees, thereby unnecessarily prolonging this case, causing counsel for both parties to expend additional time on this motion, and essentially giving rise to a second litigation on the issue of fees. Fourth, Plaintiff's counsel in the instant Motion has demonstrated a lack of understanding of the Local Rules governing attorney's fee motions and filing/ pre-filing requirements. Defendants submit more reasonable hourly rates would be: (1) Brian Pollock, Esq. - $300/hr.; (2) P. Brooks LaRue, Esq. - $200/hr.; and (3) Steffany Sanguino, Paralegal - $100/hr.

The Rules suggest that where a party contests the hourly rate of the moving party, they must disclose the hourly rate being paid to their own attorney. Defendants' counsel is charging $300/hr. *See* Declaration of Todd W. Shulby, Esq. (Exhibit 7). This is in line with what defense attorneys charge in this District in FLSA actions and should be the same as what plaintiff attorneys charge but, admittedly, this has not historically been the case. *Id.* Presumably the reality that plaintiff attorneys charge higher hourly rates is the result of plaintiff attorneys not having to be concerned about having rates that are competitive in the marketplace because the rates are being charged to the adversary at the conclusion of the case and not to the prospective client.[6]

---

[6] Plaintiff's counsel mentions in the Motion that he represents defense clients at the same hourly rate (*see* Motion, ECF No. 38, Pg 8) and that his representation of Plaintiff in this case precluded him from working defense cases at the same hourly rate (*id.* at 15). The undersigned's research found that since January 1, 2022, Plaintiff's counsel has been the attorney of record in 77 cases in the Southern District of Florida and 14 in the Middle District of Florida. Plaintiff's counsel

X.     <u>The Impact of the Contingency Nature of Plaintiff's Relationship with Counsel.</u>

In favor of his $500 hourly rate and also in favor of not downwardly adjusting attorneys'

fees, Plaintiff's Motion mentions more than once that counsels' payment in this case was

contingent on the outcome of the case and not <u>guaranteed</u>. *See e.g.* Motion, ECF No. 38, Pgs 10

and 16. The Motion does not expand on this topic, but one can surmise that this is reference to the

reality that if Plaintiff lost this case, counsel would be entitled to no attorney's fees at all. Surely,

Plaintiff's counsel has lost cases before and likely not reimbursed for his time in those cases. *See*

*e.g. Sergio Perez v. City of Opa-Locka, et al.*, USDC S.D. Fla. Case No. 1:22-cv-20748-JAL (ECF

No. 61 and 62, order and judgment awarding summary judgment against plaintiff). In fee-shifting

cases lost by a plaintiff's attorney, the defendants would typically not be required to pay the

plaintiffs' fees and costs. But does that mean that the plaintiffs' attorneys' other opponents/

defendants, in other unrelated cases, must subsidize plaintiffs' attorneys' fees to account for the

attorney's losses in other cases? In other words, because plaintiff attorneys sometimes lose cases,

does that mean that all of their other adversaries must reimburse them for those losses by paying a

higher hourly rate and/or more in overall attorney's fees than otherwise justified? That cannot be

the law. For example, as cited by the Plaintiff, "Counsel for a prevailing Plaintiff should be paid

consistent with attorneys compensated by a fee-paying client for all time he/she reasonably

expended on a matter. *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989)." (*see* Motion, ECF No. 38,

---

represented the defense in approximately 9 of those 91 cases (less than 10%) over the 2.5 years reviewed. In the undersigned's opinion, it would be difficult for a solo practitioner to be competitive in this market while attempting to charge $500/hr. to defense clients. Additionally, while counsel cites to 1 defense client that paid him $500 per hour, counsel does not state the hourly rate that he charged each of his other defense clients, thereby providing an incomplete picture and perhaps unfair comparison. *See* Declaration of Todd W. Shulby, Esq. (Exhibit 7).

Pg 9); *see also* Motion, ECF No. 38, Pg 9 (analyzing the factors to consider when deciding a reasonable hourly rate).

XI.     The Impact of Defendants' Offer of Judgment.

It is important to determine Plaintiff's attorney's fees as of July 23, 2024, which is the date Defendants made an Offer of Judgment of $12,000 to satisfy Plaintiff's attorney's fees and costs. *See* Exhibit 7. Defendants submit that if Plaintiff's attorney's fees and costs did not meet or exceed $12,000 on July 23, 2024, Plaintiff should not be awarded any attorney's fees after that date. According to Plaintiff's time records, with no reductions, Plaintiff is claiming $16,310.65 in attorney's fees as of July 23, 2024 (calculating amount using Plaintiff's time sheets, ECF No. 38-1). But, as set forth herein, Defendants are challenging the hourly rate of counsel, the time expended by counsel, and requesting a downward adjustment of attorney's fees based on Plaintiff's limited success. In consideration of the foregoing, Plaintiff's attorney's fees as of July 23, 2024, depending on the relief the Court is inclined to grant, as requested in this Response, would be well below $12,000 and therefore no attorney's fees should be awarded after that date.

XII.    Post-OJ Billing.

Defendants' Offers of Judgment were served on July 11, 2024, and limited the attorney's fees that could be sought by Plaintiff as follows: "The relevant conditions to this Offer of Judgment are that Defendants pay to Plaintiff: …. one payment to Plaintiff/ Plaintiff's counsel as reasonable attorney's fees and costs …. in an amount negotiated by the Parties and/or determined by the Court **through the date of this Offer of Judgment.**" (ECF No. 26.1, ¶c.3 and 26.2, ¶c.2)(emphasis added). Plaintiff accepted this offer and cannot change the terms of the offer. Therefore, Plaintiff's fees are limited to those incurred "through the date of [the] Offer[s] of Judgment" on July 11, 2024.

XIII.   <u>Post-Judgment Collection Billing.</u>

There is a split of authority on whether attorneys can collect fees for post-judgment collection efforts in FLSA actions. In *DiFrancesco v. Home Furniture Liquidators, Inc.*, 2009 WL 36550, at *5 (S.D. Fla. Jan. 6, 2009), the Court held that counsel was entitled to reimbursement for those fees. Several Courts have followed *DiFrancesco*. *See e.g. Cruz v. Paver Designs of Miami Dade Inc.*, 2014 WL 12539726, at *2 (S.D. Fla. Sept. 22, 2014) (internal citations omitted); *see also Podzemelnyy v. Prolog Corp.*, 2020 WL 106064873, at *4 (S.D. Fla. Apr. 20, 2020), Report and Recommendation adopted, 2020 WL 6059794 (S.D. Fla. Oct. 14, 2020).

However, other Courts have declined to follow *DiFrancesco*, including U.S. District Court Judge Middlebrooks in *Cimeus v. Vestige Sec. Inc.*, 2017 WL 9288587, at *4 (S.D. Fla. Sept. 28, 2017):

> [T]his Court is not bound to follow the decisions of other judges in the same district. *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("[A] district judge's decision neither binds another district judge nor binds him"). Thus, this Court declines to join the holding of *DiFrancesco* and, absent any binding precedent saying otherwise, declines to award future fees regarding the collection of the default judgment to Plaintiff's counsel.

*Id.* Also, at least one Court has distinguished *DiFrancesco* on grounds applicable to this case. *See Watts v. Club Madonna, Inc.*, 2020 WL 4718561, at *2 (S.D. Fla. Aug. 13, 2020)("[I]n *DiFrancesco*, the plaintiff successfully obtained a Final Judgment in Garnishment and the Court awarded fees in conjunction with the Final Judgment in Garnishment. In this case the plaintiff has not obtained any success in their post judgment collection efforts. Accordingly, the undersigned finds that the request for the fees and costs in this motion are premature under the circumstances."). Here, Plaintiff has been awarded no Final Judgment in Garnishment.

Respectfully submitted,

/s/Todd W. Shulby, Esq.
Todd W. Shulby, Esq.
Todd W. Shulby, P.A.
1792 Bell Tower Lane
Weston, Florida 33326
Telephone: (954) 530-2236
Facsimile: (954) 530-6628
E-mail: tshulby@shulbylaw.com
Florida Bar No.: 068365
Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brian H. Pollock, Esq. and Patrick Brooks LaRou, Esq.

I HEREBY CERTIFY that on August 28, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and will mail a copy of the foregoing and notice of electronic filing to the following non-CM/ECF participants: None.

By:     /s/Todd W. Shulby, Esq.
        For Todd W. Shulby, P.A.