UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-CV-20543-WILLIAMS/GOODMAN

JUAN MENDEZ,

    Plaintiff,

vs.

ALPHA & OMEGA
CALIBRATION SERVICES LLC
AND LIZ Y. LAGO,

    Defendants.
_____/

## AMENDED MOTION TO APPROVE SETTLEMENT
## AND FOR DISMISSAL WITH PREJUDICE

Plaintiff, Juan Mendez, hereby files this Amended Motion to Approve Settlement and Dismissal with Prejudice, and requests the Court to consider the following in connection with the parties' request to approve their settlement and dismiss this case:

### BACKGROUND AND PROCEDURAL HISTORY

1.    Plaintiff retained the undersigned law firm on February 7, 2024, executing a written fee agreement in which he stipulated, inter alia, that $550 per hour was a reasonable fee for the time his counsel expended (Exhibit "A").

2.    Plaintiff filed a Complaint against Defendants alleging they violated the Fair Labor Standards Act ("FLSA") by not paying him overtime wages for all the overtime hours he worked, seeking his unpaid overtime wages, liquidated damages, attorney's fees, and costs. [ECF No. 1.]

1

3. Plaintiff initially filed a Statement of Claim, estimating that he is owed $8,389.29 in alleged unpaid overtime wages and $981.54 in alleged unpaid regular "gap time" wages.[1] [ECF No. 7.]

4. The Defendants timely responded to the Complaint with their Answer and (12) Affirmative Defenses, denying they violated the FLSA or owed the Plaintiff any unpaid overtime wages and asserting twelve affirmative defenses. [ECF No. 11.]

5. Plaintiff challenged several of the Defendants' affirmative defenses, and after the parties conferred, he filed a motion requesting the Court to strike the Second, Third, and Fifth Affirmative Defenses. [ECF No. 14.] Defendants filed a Response in Opposition, and Plaintiff filed a Reply. [ECF Nos. 26, 28.]

6. Meanwhile, the Defendants filed their Response to the Statement of Claim, explaining that the Plaintiff used the wrong hourly pay rate for a portion of his tenure (up to August 15, 2021), why they contended he was properly and totally compensated (which included using of a third-party application that tracked the IP location from which Plaintiff logged in to clock in/out). [ECF No. 22.] Defendants also produced the time and pay records for Plaintiff.

7. On June 3, 2024, Plaintiff served on Defendants:

    a. Plaintiff's Rule 26(a) Disclosures;

    b. First Requests for Production to Defendants;

    c. Requests for Production to Defendants;

    d. Interrogatories to Alpha & Omega Calibration Services LLC; and

    e. Interrogatories to Liz Y. Lago.

---

[1] "In the wage and hour world, this time between scheduled hours and overtime hours is known as 'pure gap time'." *Thrower v. Peach County, Georgia, Bd. of Educ.*, 2010 WL 4536997 (M.D. Ga. Nov. 2, 2010).

2

8. The parties also exchanged additional information informally, as the dispute narrowed to focus on whether the Defendants improperly altered Plaintiff's time records through lunch break or other deductions, what records existed to substantiate Plaintiff's claim(s), whether Respondents owed him any money as a result and the amount.

9. The Plaintiff revised his calculations from those contained in the Statement of Claim, and he shared his updated calculations with the Defendants. The revised calculations reflected that Plaintiff's claim for $6,007.32 in unpaid overtime wages and another $971.62 in regular "gap time" wages. This recalculation was based on Plaintiff's revised estimate of Defendants deducting 2.5 hours from nearly all the weeks he worked.

10. The Plaintiff's overtime claim continued narrowing down and ultimately focused on the lunch break deductions and a dispute over when and for how long he took off work for lunch.

11. Defendants maintained their position that they did not owe Plaintiff any wages, whether overtime or regular, notwithstanding his recalculation.

12. Prior to the settlement conference, the parties prepared for and then discussed their respective positions and exchanged settlement offers but could not resolve this case at that time.

13. The parties attended an in-person settlement conference with their counsel and Magistrate Judge Goodman on June 17, 2024, for approximately 3 hours and 15 minutes, but without a resolution of any issues. [ECF Nos. 31, 32.]

14. Plaintiff then conferred with the Defendants about his intention to file an Amended Complaint to assert non-FLSA wage claims and requested dates to depose each Defendant.

15. The parties resumed settlement negotiations, both by phone and email, ultimately agreeing on a settlement amount and certain non-monetary terms on June 21, 2024. The

3

settlement took into account the Defendants' records reflecting that they paid for all hours worked and what Plaintiff claimed was owed for his overtime and regular wages.

16. The parties then agreed upon the terms of their written settlement agreement (the "Settlement Agreement") to formalize the resolution of this case and avoid incurring additional attorney's fees and costs that accompany the uncertainty of continued litigation. (Exhibit "B.")

17. The Settlement Agreement reflects that the parties settled this case for a total of $28,500, which is comprised of $6,500.00 to the Plaintiff (allocating $3,000 to alleged unpaid overtime wages, $3,000 to alleged liquidated damages, and $500.00 to alleged unpaid regular wages) and $22,000 to the Plaintiff's counsel for attorney's fees ($21,455.60) and costs ($544.40). (Exhibit "B".)

18. The attorney's fees and costs to be paid to Plaintiff's counsel represent a reduction of the $26,804.60 in attorney's fees ($26,213.80) and costs ($590.80) incurred in representing Plaintiff in this case. (Exhibit "C".)

19. The time records reflect the following rates were used, although the software does not identify the rates charged in the line-item entries:

    a. Attorney Brian H. Pollock, Esq. billed his time at $500/hour;

    b. Attorney Patrick Brooks LaRou billed his time at $325/hour; and

    c. Paralegal Steffany Sanguino billed her time at $165/hour.

(Exhibit "C".)

20. The parties requested the Court approve the settlement and dismiss this case, but they neglected to provide the Court with the Plaintiff's fee agreement with his counsel or the time/expense records. [ECF No. 36.]

4

21. The Court denied the parties' request for approval and dismissal, finding the attorney's fees and costs to be excessive as comprising more than 75% of the settlement amount based on the lack of information provided to the Court regarding the time and expenses incurred and when considered against the recovery to the Plaintiff. [ECF No. 37.]

22. This Renewed Motion ensued and is limited to addressing the Court's concerns identified in the Paperless Order entered on August 1, 2024, and providing:

   a. The Settlement Agreement (Exhibit "B");

   b. Retainer Agreement (Exhibit "A");

   c. Timesheets ("C"; and

   d. Billing rates, credentials, and experience for each person who billed time.

[ECF No. 37.]

23. Upon approval of the parties' Settlement Agreement, Plaintiff requests the Court to dismiss this case upon condition that it retain jurisdiction for 45 days, consistent with the agreement of the parties. (Exhibit "B".)

## MEMORANDUM OF LAW

### *There Is No Requirement of Proportionality In FLSA Cases*

The analysis used to determine a reasonable attorney's fees is the same, regardless of whether the case is settled or adjudicated at trial. *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1267 (M.D. Fla. 2008) ("The Court finds no reasonable basis to distinguish between a plaintiff who prevails through settlement and one who prevails at trial.") In rejecting the attorneys' fees and costs to which the parties specifically negotiated and agreed in the settlement agreement [ECF No. 36], the Court expressed concern that the attorneys' fees and costs to be paid to Plaintiff's counsel through the Settlement Agreement were excessive because they consumed

5

more than 75% of the settlement and were not supported by any information from which the Court could determine them to be fair and reasonable. *Id.* The Court's concerns did not take into account certain factual, practical, or legal considerations that support the finding that the settlement is fair and reasonable to all parties.

The facts of this case are that the Plaintiff's claim – if he were 100% correct on everything – would have involved $6,007.32 in unpaid overtime wages and an equal amount of liquidated damages. However, the additional facts in this case were that Plaintiff clocked in on his phone and away from the Defendants' premises and involved a dispute over his lunch breaks. Consequently, Plaintiff was not necessarily going to recover all the overtime he claimed, and the settlement reflects a fair and reasonable compromise of the issues – which resulted in his receipt of more than he could have claimed in unpaid overtime wages. Continued litigation would have resulted in Plaintiff's counsel's fees increasing in proportion to the time and effort expended in pursuing this case, and the parties' settlement reflected a fair compromise of Plaintiff's claim and his counsel's fees.

From a public policy standpoint, finding attorney's fees excessive because they exceed a claimant's recovery would deprive employees who are owed modest amounts of overtime wages access to skilled attorneys willing to take on their cases, negating the purpose behind the FLSA. Put another way, the Court's refusal to approve a settlement because the fees seem "excessive" would result in unscrupulous employers being able to get away with stealing wages from their employees, as long as they don't owe them too much money, or as long as they require the employee's lawyer to spend a bunch of time litigating.

> With regard to the amount of attorney's fees sought, it is well settled that "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case." *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 02-61667-CIV, 2005

6

WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005). "Although a court may consider the amount of damages recovered in awarding attorney's fees, it should also be mindful that to reduce a fee on this basis may 'prevent individuals with relatively small claims from effectively enforcing their rights and protecting the interest of the public ...' " *Id.* (quoting *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-229 (7th Cir. 1972) ).

*Morais v. Rhino Holdings One, Inc.*, 2017 WL 7794332, at *2 (S.D. Fla. June 2, 2017), *report and recommendation adopted*, 2017 WL 7794289 (S.D. Fla. June 6, 2017). Consequently, attorneys' fees in FLSA cases are not limited by the amounts identified in contingency fee agreements with their counsel. *See e.g.*, *Moore v. Appliance Direct, Inc.*, 2013 WL 12336220, at *6, Fn. 2 (M.D. Fla. Oct. 22, 2013); *Lawrence v. Berkley Group, Inc.*, 2013 WL 12239477, at *2 (S.D. Fla. Feb. 20, 2013) (Williams, J.) (" the fee award is not to be simply proportionate to the results, particularly in FLSA cases where attorneys' fees often exceed recovery but there is a public policy concern in ensuring representation for even small claims.") (*citing Brandt v. Magnificent Quality Florals Corp.*, 2011 WL 4625379 at *12 (S.D. Fla. 2011).)

The Eleventh Circuit Court of Appeals <u>explicitly rejected a rule of proportionality</u> between the amount of recovery by an FLSA plaintiff and the attorney's fees to be awarded:

> Moreover, whatever intuitive appeal Lacura's **proportionality argument may have is undercut by *City of Riverside v. Rivera***, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), in which the Supreme Court rejected a proportionality argument for attorneys' fees awarded under 42 U.S.C. § 1988. *Rivera*'s reasoning is arguably even stronger in FLSA cases, where the FLSA's text renders attorneys' fees mandatory. *Compare* FLSA, 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)), *with* 42 U.S.C. § 1988(b) ("[T]he court, *in its discretion, may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." (emphasis added) ); *see also James v. Wash Depot Holdings, Inc.*, 489 F.Supp.2d 1341, 1347 (S.D. Fla. 2007) ("**Fee awards … should not simply be proportionate to the results obtained by the Plaintiff**."); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005) (noting that **it is not uncommon for fee requests to exceed the judgment in FLSA cases**). [*Emphasis added.*]

*P&k Rest. Enter., LLC v. Jackson*, 758 Fed. Appx. 844, 851 (11th Cir. 2019).

7

The Second Circuit Court of Appeals also explicitly rejected a rule of proportionality when it addressed the numerous reasons against considering the proportionality between attorneys' fee awards and plaintiff recoveries in FLSA cases:

> **Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees**. With respect to the statutory text, FLSA simply provides for a "reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). **Nothing in this clause or the surrounding text supports the conclusion that a "reasonable attorney's fee" must be a "proportional" fee**. *See, e.g.*, *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 294 (3d Cir. 2007) (explaining that "[n]othing in the text of [ERISA's similar fee-shifting provision] suggests that to be 'reasonable,' fees must be proportional"); *cf.* 42 U.S.C. § 1997e(d)(l)(B)(i) (expressly providing that a prisoner will not be awarded fees in an action brought pursuant to 42 U.S.C. § 1988 unless "the amount of the fee is proportionately related to the court ordered relief for the violation").
>
> **A proportionality rule would also be inconsistent with the remedial goals of the FLSA**, which we have deemed a "uniquely protective statute." *Cheeks*, 796 F.3d at 207. In 1938, Congress enacted the FLSA to guarantee workers "[a] fair day's pay for a fair day's work" and to guard against "the evil of 'overwork' as well as 'underpay.' " *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)). **By implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high**. **Fee awards in wage and hour cases should "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel."** *Sand v. Greenberg,* No. 08-cv-7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). In advancing Congress's goals under the FLSA to ensure a "fair day's pay for a fair day's work," the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation. *Missel*, 316 U.S. at 578, 62 S.Ct. 1216.
>
> While in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by the district courts in evaluating fee requests, *see Goldberger,* 209 F.3d at 50-51), **there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit**. *See City of Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."). Even if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award.

8

**In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement. FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries**. Plaintiffs in wage and hour disputes, like Fisher (a professional chaperone, earning $10 an hour), earn modest salaries. *See Cheeks*, 796 F.3d at 207 (noting that FLSA cases tend to settle for less than $20,000 in total recovery and fees, and that employees will often "settle for between $500 and $2,000" in unpaid compensation (internal quotation marks and citation omitted)). **If plaintiffs' attorneys in these so-called "run of the mill" FLSA actions are limited to a proportional fee of their client's recovery (here, a maximum of $11,170), no rational attorney would take on these cases unless she were doing so essentially pro bono. Without fee-shifting provisions providing compensation for counsel, employees like Fisher would be left with little legal recourse**. [*Emphasis added*.]

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603–04 (2d Cir. 2020).

### *Attorneys' Fees In FLSA Cases Are Disconnected From The Recovery*

Several cases within the Eleventh Circuit support the finding that attorneys' fees in FLSA cases are not limited by or connected to the recovery by a plaintiff who recovers money.

- In *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005), Chief Magistrate Judge Torres recognized as follows with respect to the interplay between attorney's fees and recoveries in FLSA cases while awarding approximately $7,000 in fees on a $921.00 judgment:

    > Moreover, "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case." *Holyfield v. F.P. Quinn & Co.,* No. 90 C 507, 1991 WL 65928, *1 (N.D.Ill. April 21, 1991) (court awarded approximately $7,000 in fees even though judgment was only $921). Although a court may consider the amount of damages recovered in awarding attorney's fees, it should also be mindful that to reduce a fee on this basis may "prevent individuals with relatively small claims from effectively enforcing their rights and protecting the interest of the public...." *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-229 (7th Cir.1972).

    *See also James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007).

9

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

- One of the more illustrative cases to be considered is *Brown v. Lawn Enf't Agency, Inc.*, 369 F. Supp. 3d 1224, 1226 (N.D. Fla. 2019). In *Brown*, the Court was tasked with determining the attorneys' fees and costs to award to a plaintiff who, after losing two of his claims pursued under Florida law, ultimately agreed that he was entitled to <u>recover $84.14 in damages</u> (prior to trial). *Id.*, at 1228. That Court ultimately <u>awarded the plaintiff's counsel $49,696.88 in attorneys' fees and $440.00 in costs</u>. The attorney's fees in *Brown* represent **over 597 times** the award to the plaintiff ($50,136.88 ÷ $84.14).

- The Eleventh Circuit Court of Appeals affirmed the District Court's award of <u>$120,877.70 in attorneys' fees and costs</u> based on the parties' settlement in which the <u>plaintiff recovered $26,000</u>. *Laney v. BBB Logistics, Inc.*, 844 Fed.Appx. 203, at *2 (11th Cir. Feb. 8, 2021). The attorneys' fees approved in *Laney* were **4.65 times** the amount that the plaintiff recovered ($120,877.70 ÷ $26,000).

Other decisions from the District Courts for the Southern, Middle, and Northern Districts of Florida not cited above have similarly found that the reasonableness of counsel's attorney's fees should not be analyzed against an FLSA plaintiff's recovery unless circumstances not present herein exist.

### *The Attorney's Fees Did Not Reduce Plaintiff's Recovery*

Upon recalculation later in February of 2024, Plaintiff agreed that the most he could have recovered was $6,007.32 in unpaid overtime wages (if he could prove that the Defendants improperly deducted 289.89 hours from his paychecks, notwithstanding their time records). Plaintiff provided the Defendants with several documents supporting his contention that they improperly deducted time from his pay, but not nearly 289.89 hours. A legitimate dispute existed about whether Defendants underpaid Plaintiff based on the time records, which likely would have

10

precluded the Court from awarding liquidated damages. *See e.g.*, *Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1288 (11th Cir. 2021) (declining to award liquidated damages in meal break case).

In resolving this case, the Plaintiff's recovery was not reduced or adversely impacted by the attorney's fees to be paid to his counsel. Instead, the fees increased the total amounts demanded from and paid by the Defendants.

### *Plaintiff's Attorney's Fees and Costs Are Reasonable*

The settlement agreement provides for Plaintiff's counsel to receive $22,000 in attorneys' fees and costs, which represents a compromise of the attorney's fees (and costs) incurred in the prosecution of this matter. As reflected in the time and expense records attached as Exhibit "C," Plaintiff's counsel expended over $26,213.80 in time and expenses, including over $26,804.60 in time and $590.80 in costs. The time identified in Exhibit "C" excludes multiple in-person conferences Mr. Pollock held with Mr. LaRou and/or Ms. Sanguino about this case (including strategy for it) and excludes the additional time spent Mr. Pollock and Mr. LaRou spent today in continuing to researching and draft this Amended Motion.

Plaintiff requests that the Court reconsider its denial of the Joint Motion to Approve the Settlement [ECF No. 37] and determine the settlement is fair and reasonable after considering as reasonable Mr. Pollock's rate of $500 per hour, Mr. LaRou's rate of $325 per hour, and Ms. Sanguino's rate of $165 per hour and the time expended in this case. For reference, and although not binding on this Court, Magistrate Judge Goodman recently determined that the same rates charged by the same personnel were reasonable in approving the settlement of *Maracallo vs. Cusano Air Conditioning & Heating, Inc.*, 1:24-CV-20546-JG [ECF No. 37], another FLSA matter, on May 31, 2024.

11

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884  FAX 305.230.4844
www.fairlawattorney.com

*Claimant's Lead Counsel - Brian H. Pollock, Esquire*

September 2024 will mark Mr. Pollock's 25th year of practicing law. From October 2005 to October 31, 2011, Mr. Pollock served on The Florida Bar Unlicensed Practice of Law Committee 11A and was its Chairperson from May 2011 to October 31, 2011. Mr. Pollock most recently served as president of the Miami-Dade County Bar Association Labor & Employment Committee from 2022 to 2023.

Mr. Pollock's requested rate of $500/hour recognizes the efficiencies an attorney with his experience creates and with which he can accomplish or delegate tasks involved in litigating FLSA cases. Brian H. Pollock, Esq. has been a member in good standing of The Florida Bar and of the District Court for the Southern District of Florida since 1999. Mr. Pollock has been practicing civil litigation in the Florida state and federal courts since 1999, and he has been admitted *pro hac vice* to serve as counsel in class actions pending in the District Court for the Northern District of Georgia and in the State of Georgia. He is admitted to practice and routinely practices in the Middle District of Florida, the Northern District Court of Florida, and the Eleventh Circuit Court of Appeals. He has also been admitted to practice and has appeared in the United States Supreme Court. Mr. Pollock also handles matters in arbitration, including with the American Arbitration Association and other arbitration managers.

Mr. Pollock has represented numerous employees in the Florida state, federal, and appellate courts in both individual actions and in class / collective actions involving unpaid wages, and he continues to do so. Mr. Pollock has tried numerous state and federal cases during his career. In 2023, Mr. Pollock tried three cases to verdict in the Southern District of Florida. Each trial resulted in a verdict for his clients, the plaintiffs, with two trials involving claims for unpaid overtime wages under the FLSA.

12

Mr. Pollock was appointed counsel in collective actions assembled under the FLSA in this Court in *Peña vs. Handy Wash, Inc.*, S.D. Fla. Case No.: 14-20352-ALTONAGA, in *Caamano v. 7 Call Center Inc.*, S.D. Fla. No.: 16-CV-20932-GAYLES, in *Benjamin v. VHU Express, Inc.*, S.D. Fla. Case No.: 15-CV-20642-KING, in *Freese v. Treecycle Land Clearing Inc.*, S.D. Fla. Case No.: 17-CV-81169-REINHART, and in *Collado v. 450 North River Drive, LLC*, S.D. Fla. Case No.: 22-cv-23074-BLOOM.

Mr. Pollock was appointed as class counsel in several state court class actions involving unpaid wages, including in *Rojas Molina vs. Yankee Development Corp. d/b/a A Fish Called Avalon*, Eleventh Circuit Court for Miami-Dade Case No.: 16-010745 CA 01 (09), and in *Azor v. Direct Airlines Services, Inc.*, Eleventh Circuit Court for Miami-Dade Case No.: 17-007921 CA 01 (32).

Besides representing claimants, Mr. Pollock and his firm regularly represent employers and other defendants in Florida state and federal courts, arbitration proceedings, and administrative investigations. Mr. Pollock's customary rate paid by defense clients (and employers) before, during, and after the pendency of this case has been $500.00 per hour and secured by a retainer. This case, in contrast, provided FairLaw Firm with <u>no guarantee</u> of payment for the services rendered to Plaintiff. For this case, the Plaintiff signed a contingency agreement and agreed that all time spent by Mr. Pollock and the other attorneys in his firm should be compensated at a rate of $550.00/hour if a recovery were had.

The District Court for the Southern District of Florida recently approved Mr. Pollock's $500/hour rate when it approved the settlement in *Maracallo vs. Cusano Air Conditioning & Heating, Inc.*, S.D. Fla. Case No.: 24-CV-20546-GOODMAN at ECF No. 37 on May 31, 2024 ("The Undersigned finds that Claimant's lead counsel's hourly rate of $500.00, for an attorney practicing

13

law for approximately 25 years, to be reasonable.")[2] This Court previously approved Mr. Pollock's rate at $500/hour in *Palacio Cruz vs. Infante Security Protection, LLC*, 18-CV-21839-GAYLES on September 4, 2018, at ECF No. 17.

### *Patrick Brooks LaRou, Esq.*

Mr. LaRou is an associate attorney at FairLaw Firm. Mr. LaRou graduated from Virginia Commonwealth University in 2017. Mr. LaRou graduated from St. Thomas University Benjamin L. Crump School of Law in May 2022, cum laude, with a concentration in Intercultural Human Rights. He served as staff editor for the St. Thomas University Benjamin L. Crump School of Law's Intercultural Human Rights Law Review. While at St. Thomas, Mr. LaRou was recognized for his dedication to public service, receiving a pro bono commendation for his volunteer work as a legislative assistant to the Miami-Dade Board of County Commissioners, during which he devoted over 200 pro bono hours to serving the County.

September 2024 will mark Mr. LaRou's 2-year anniversary as an attorney. Besides being licensed to practice law in the State of Florida, Mr. LaRou has been admitted and routinely practices in the District Courts for the Southern and Middle Districts of Florida. Mr. LaRou has mainly practiced labor and employment law as an attorney, often representing employees in employment disputes while occasionally representing employers. Mr. LaRou is an effective and efficient attorney with trial experience. Mr. LaRou recently obtained a verdict for the plaintiff in *Sierra vs. Rhino Containers, LLC*, S.D. Fla. Case No. 1:22-CIV-21732-SCOLA, for unpaid wages under owed under the FLSA. Considering the foregoing, the appropriate rate for Mr. LaRou's

---

[2] Magistrate Judge Goodman approved "…(2) Attorney P. Brooks LaRou, with an hourly rate of $325.00, practicing law for approximately two years; and (3) Paralegal Steffany Sanguino, with an hourly rate of $165.00, practicing as a paralegal for approximately ten years." *Id.*

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

level of experience is $325.00 per hour. (*See Maracallo vs. Cusano Air Conditioning & Heating, Inc.*, S.D. Fla. Case No.: 24-CV-20546-GOODMAN at ECF No. 37 on May 31, 2024.)

*Steffany Sanguino*

Ms. Sanguino is a paralegal at FairLaw Firm. She holds a Paralegal Certificate from Ashworth College. She earned an Associate of Art's Degree from Miami-Dade College in Business and a Bachelor of Applied Science, Supervision, and Management Degree from Miami Dade College with a concentration in Human Resource Management. Ms. Sanguino is bilingual (English and Spanish) and has worked as a litigation paralegal in Florida since January 2016. As demonstrated in the billing records, Ms. Sanguino handled numerous tasks that are often performed by attorneys. The rate charged and paid by hourly clients of the firm for the work performed by Ms. Sanguino is $165 per hour. (*See Maracallo vs. Cusano Air Conditioning & Heating, Inc.*, S.D. Fla. Case No.: 24-CV-20546-GOODMAN at ECF No. 37 on May 31, 2024.)

***Request for Approval, Dismissal, and Retention of Jurisdiction***

Based upon the foregoing, Plaintiff respectfully requests that the Court approve the Settlement Agreement as fair and reasonable and dismiss this case with prejudice, with each party to bear its own costs, fees, and expenses (except as otherwise set forth in the parties' Settlement Agreement), upon further condition that the Court retain jurisdiction over this matter for a period of 45 days to enforce the parties' Settlement Agreement.

15

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Dated this 2nd day of August 2024.

                          Respectfully submitted,

                          <u>Brian H. Pollock, Esq.</u>
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Ave.
Suite 770
Coral Gables, FL 33146
Tel: 305.230.4884
*Counsel for Plaintiff*

16

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*



135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146

tel 305.230.4884   fax 305.230.4844

brian@fairlawattorney.com   www.fairlawattorney.com

## CLIENT CONTINGENCY AGREEMENT

The undersigned Client in and for adequate consideration receipt of which is acknowledged, hereby retains and employs the Law Office of Brian H. Pollock, P.A. d/b/a the FairLaw Firm, to represent him/her in connection with his/her claim(s) for unpaid overtime wages, minimum wages, wages, living/prevailing wages, under the Fair Labor Standards Act, the Florida Minimum Wage Act, and/or the Florida Unpaid Wage Act, for violating 26 U.S.C. §7434, but not for discrimination, harassment, and/or any other type of claim that has not been expressly set forth above.

As compensation for my attorney's services, I agree to pay my attorneys the greater of (a) 40% of the proceeds of the recovery, (b) any attorneys' fees awarded by the court or offered/actually paid by the Defendants, or (c) all amounts paid/received in excess of the outstanding and unpaid wages due to Client, whichever is more. Recovery of attorneys' fees, including any amount awarded by the Court or designated by the Defendant(s) as attorneys' fees, is assigned to the FairLaw Firm. I agree to not compromise my claim without providing for recovery of reasonable attorneys' fees by my attorney(s) at the reasonable hourly rate. This Agreement does not include post-judgment, appellate, and/or collection work, which can be accomplished for an additional fee and/or percentage.

I agree to my case being filed as a class/collective action and to being either a participant or named representative on behalf of other similarly situated employees, at my attorneys' choice. I understand that any recovery for me will be based on the wages owed.

If the client discharges the FairLaw Firm, settles any portion of the claim while represented by the FairLaw Firm, or in the event that the FairLaw Firm chooses to withdraw, for whatever reason, the FairLaw Firm will retain a charging lien against any and all recovery for the agreed-upon fee, including all time and costs expended. The FairLaw Firm reserves the right to withdraw from representation at its sole and absolute discretion. Should any action be necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to all costs, fees (including attorneys' fees) and other associated costs incurred in enforcing this Agreement. This includes attorneys' fees whether incurred pretrial, during trial or at any appellate level. In the event of any dispute between the parties to this agreement, the venue and jurisdiction for all such disputes shall be in the Miami-Dade Courts. The client stipulates that the reasonable fee for the services rendered by the attorneys of this firm are at least $550.00 per hour for his/her case.

If no recovery is made and I have not fired my attorneys or the Court has not imposed a charging lien in favor of my attorneys, I will not owe my attorneys any sum as attorneys' fees.

Doc ID: 29d6bc2fc50b85b27980c35df176e97990c8d81c

I agree to pay for the costs of investigation, and should it be necessary to institute suit, the court costs and any other costs necessarily incurred by my attorneys in pursuing my claim, with my attorney advancing these sums.

I hereby appoint FairLaw Firm as my agent, giving onto it the power to endorse on my behalf, for placement into its Trust Account, any and all checks and/or drafts derived from your work. I further agree that should any recovery be made that you may request that all payments be made naming FairLaw Firm as sole/joint payee.

This Agreement may be executed in counterparts and facsimile copy of a signature may serve as an original for all purposes. The above employment is hereby accepted under the terms stated therein. I have read and understand each of the aforementioned items.

No guarantees have been made about my claim or the ability to succeed. I also understand that my file and any materials provided to FairLaw Firm may be discarded after two years. Further, I agree to pay the costs of mediation if I do not accept the last amount offered at any mediation.

I agree that any original documents retained by FairLaw Firm upon the conclusion of representation or receipt of last payment to me may be scanned and then destroyed upon the closure of my case and issuance of final payment to me.

Dated this  02 / 07 / 2024

| CLIENT | FAIRLAW FIRM |
|---|---|
| Sign: _____ | By: _____ |
| | Brian H. Pollock, Esq |

Print Name: Juan mendez

S.S. No.: ▇▇▇▇▇▇▇

Date of Birt ▇▇▇▇▇▇▇

Address: ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇  tate         Zip

Tel: ▇▇▇▇▇▇▇

Email: ▇▇▇▇▇▇▇

Doc ID: 29d6bc2fc50b85b27980c35df176e97990c8d81c